UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOUKONE VONGDENG,<br><br>           Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>           Defendant. | No.  2:15-cv-1071-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.     BACKGROUND

Plaintiff, born February 7, 1963, applied on February 28, 2012 for DIB and SSI, alleging disability beginning January 1, 2007.  Administrative Transcript ("AT") 50, 174-87.  Plaintiff alleged she was unable to work due to depression and posttraumatic stress disorder ("PTSD").  AT 50, 72.  In a decision dated September 20, 2013, the ALJ determined that plaintiff was not

////

1

disabled.[1]  AT 11-24.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.
>
> 3. The claimant has the following severe impairments: anxiety and depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

perform a full range of work at all exertional levels but with the following nonexertional limitations: her work is limited to simple, as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks; she needs to be able to work in a low stress jobs [*sic*], which is defined as only occasional required decision making and only occasional changes in the work setting; she can have no interaction with the general public; and although she can work around coworkers throughout the day, she can have only occasional interaction with her coworkers.

6. The claimant has no past relevant work.

7. The claimant was born on February 7, 1963 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. She has since attained age 50, which is defined as an individual closely approaching advanced age.

8. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision.

AT 13-24.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly weighed the medical opinion evidence in the record when determining plaintiff's residual functional capacity ("RFC"); and (2) improperly discounted the third party statement of plaintiff's adult son without providing germane reasons for doing so.

III.  LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

   A.  *The ALJ did not err in Considering the Medical Opinion Evidence*

First, plaintiff argues that the ALJ erred by giving "minimal weight" to the opinion of Dr. Kasmi, plaintiff's treating psychiatrist, without providing sufficient reasons for doing so.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

1    treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81
2    F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be
3    rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at
4    830.  While a treating professional's opinion generally is accorded superior weight, if it is
5    contradicted by a supported examining professional's opinion (e.g., supported by different
6    independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d
7    1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In
8    any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical
9    findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,
10   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a
11   non-examining professional, without other evidence, is insufficient to reject the opinion of a
12   treating or examining professional.  Lester, 81 F.3d at 831.

13          Here, Dr. Kazmi acted as plaintiff's treating psychiatrist during the relevant period.  On
14   August 27, 2013, Dr. Kazmi filled out a form entitled "Complete Medical Report (Mental)" and
15   provided his opinion regarding the impact plaintiff's mental impairments had on her functioning.
16   AT 388-93.  In this form, Dr. Kazmi diagnosed plaintiff with chronic PTSD and noted that he had
17   provided plaintiff treatment in the form of "psychiatric evaluation, medication monitoring, and
18   referral to intensive case management," but that plaintiff  "continue[d] to display significant
19   symptoms."  AT 388.  He also noted that plaintiff's symptoms caused her to experience
20   "significant impairment in [her] ability to consistently complete activities of daily living," but that
21   her prognosis was "fair."  Id.  With regard to plaintiff's ability to perform work related functions,
22   Dr. Kazmi opined that plaintiff's abilities to follow work rules, understand, remember, and carry
23   out simple job instructions, and maintain personal appearance were "good."  AT 389, 391.  He
24   opined further that plaintiff's abilities to use judgement, understand, remember, and carry out
25   detailed, but not complex job instructions, and behave in an emotionally stable manner were
26   "fair."  Id.  He also opined that all other aspects of plaintiff's mental workplace abilities were
27   "poor," including her abilities to interact with coworkers, supervisors, and the public, deal with
28   workplace stress, function independently, maintain attention and concentration, and understand,

remember, and carry out complex job instructions. Id. In addition, Dr. Kazmi noted that plaintiff "experiences significant anxiety when facing interactions with new people, groups of people and persons of authority," and "often become tearful and agitated when faced w[ith] novel social situations." Id. Finally, he noted that plaintiff "is unable to remember and carry out complex instructions due to processing errors" that arise because she "is internally preoccupied with thoughts of previous trauma and loss of family to homicide." AT 391.

The ALJ assigned "minimal weight" to Dr. Kazmi's opinion with the following justification:

> Dr. Kazmi's opinion is inconsistent with his treatment record. He states that [the claimant] had significant impairment in her ability to consistently complete activities of daily living, but the claimant regularly reported good activities of daily living. The claimant did not, in fact, report consistent symptoms and actually had general stability, with minimal symptom reports and only two medication adjustments. There is little evidence of even allegations consistent with the claimant's social limitation and the claimant regularly was noted as cooperative and able to interact with her clinicians. Dr. Kazmi's explanations for his numerous poor findings are also not supported by the record. In regard to her independent living skills, this is not noted during treatment, and, again, the claimant had good activities of daily living. Dr. Kazmi's explanation for relating predictably and demonstrating reliability is also not consistent with the treatment. The claimant was very rarely noted as agitated and, in fact, reported some social abilities and, at a minimum could socialize with her family. There is no evidence during treatment of problems attending appointments. His opinion is, thus, unsupported by his treatment record and is given minimal weight.

AT 21-22. Plaintiff contends that the ALJ's reasons for discounting Dr. Kazmi's opinion were not specific and legitimate and were not supported by substantial evidence in the record. For the reasons discussed below, this argument is not well taken.

At its core, the ALJ's reasoning behind his decision to discount Dr. Kazmi's opinion was due to the fact that Dr. Kazmi's own treatment findings and observations were in apparent conflict with his restrictive opinion regarding plaintiff's ability to carry out workplace functions. Such a reason is sufficient to support an ALJ's determination that a treating physician's opinion is entitled to reduced weight in determining a claimant's RFC, provided that substantial evidence

from the record supports that reasoning. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that incongruities between a treating physician's objective medical findings and that physician's opinion constitute specific and legitimate reasons for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . , or by objective medical findings."); Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings). Here, there existed substantial evidence to support the ALJ's reasoning.

First, the ALJ observed that Dr. Kazmi's opinion that plaintiff was "significantly impaired" in her ability to carry out daily living activities was undermined by plaintiff's own reports of her daily activities to the clinicians at San Joaquin County Behavioral Health Services—where Dr. Kazmi acted as plaintiff's treating psychiatrist—that suggested she was not limited to the degree Dr. Kazmi opined. As the ALJ highlighted, plaintiff reported that her daily activities consisted of doing some household chores, napping, watching television, and socializing with neighbors and friends. AT 275. Plaintiff also reported that she cooked for herself and went for walks. AT 270. It was reasonable for the ALJ to conclude that plaintiff's reports of such activities to her clinicians conflicted with Dr. Kazmi's opinion that plaintiff's mental impairments caused significant impairments in her ability to complete or carry out her daily living activities.

Second, the ALJ also found that Dr. Kazmi's treatment records showed that plaintiff reported minimal symptoms and was generally stable throughout the course of her treatment, requiring only two adjustments to her prescribed medicines. To be sure, Dr. Kazmi's treatment records provide substantial evidence in support of this reasoning. AT 264, 266, 272-74, 276, 313, 347, 349-50, 352-53.[2] Furthermore, they generally show that plaintiff's symptoms largely

---

[2] While the record contains more than two treatment notes indicating that the dosages of plaintiff's medications were increased, all but two of those notes appear to be duplicates and the

improved throughout the course of the minimal treatment provided to her by Dr. Kazmi, which primarily consisted of prescribed medications. E.g., AT 274-76. On the couple of occasions that plaintiff symptoms began to worsen, Dr. Kazmi increased the dosage of her medications, which resulted in a stabilization of plaintiff's symptoms. AT 272-73, 347-49. Generally, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). Therefore, it was proper for the ALJ to determine that the fact that Dr. Kazmi's treatment records showed that plaintiff exhibited minimal symptoms that were generally well controlled with prescribed medications undermined the serious mental limitations Dr. Kazmi opined.

Third, the ALJ properly determined that Kazmi's opinion that plaintiff's mental impairments caused significant problems regarding her ability to engage in social interactions conflicted with the fact that nearly all of plaintiff's treatment notes showed that plaintiff was cooperative and consistently able to appropriately interact with Dr. Kazmi and the other clinicians at San Joaquin County Behavioral Health Services. E.g., AT 264, 266, 272, 274-76, 284-85, 312-13, 321-22, 347, 349-50, 352-53. In addition, plaintiff's treatment records from San Joaquin County Behavioral Health Services show that plaintiff reported that her daily living activities included socializing with family members, friends, and neighbors, further indicating that plaintiff was not as limited in her social abilities as Dr. Kazmi opined. AT 270, 275.

Fourth, there was substantial support for the ALJ's determination that Dr. Kazmi's findings that plaintiff was significantly impaired in her ability to reliably attend appointments and had a "poor" overall ability to demonstrate reliability conflicted with his own treatment records. Indeed, nothing in the record indicates that plaintiff failed to appear at or was late to any of her appointments with Dr. Kazmi at any time during the course of her treatment. Furthermore, the record shows that plaintiff was generally compliant with all prescribed medications and other

---

record shows that plaintiff received increases to her dosages on only two separate occasions, with the first instance occurring on August 10, 2012, and the second on March 15, 2013. AT 266, 349.

treatment. E.g., AT 264, 266, 347, 353.  Plaintiff contends that the only reason she was able to consistently attend her appointments was because her son had reminded her to go.  However, nothing in the record beyond plaintiff's own testimony and that of her son, both of which the ALJ properly discounted for the reasons discussed below, indicates that plaintiff would have been unable to reliably attend her appointments and properly follow her prescribed treatment regimen.  In short, the evidence in the record provided a substantial basis for the ALJ's determination that Dr. Kazmi's opinion that plaintiff had a "poor" ability to demonstrate reliability was overly restrictive and, thus, was entitled to only minimal weight.

Finally, even though plaintiff makes much of the fact that Dr. Kazmi downgraded plaintiff's Global Assessment of Functioning ("GAF") score from 50 to 48 during the course of plaintiff's treatment between 2012 and 2013, which is suggestive of serious symptoms or impairment, GAF scores are not dispositive in social security cases.[3]  Trinchere v. Astrue, 2008 WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008).  A low GAF score does not alone determine disability, but is a piece of evidence to be considered with the rest of the record.  Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (citation omitted).  An ALJ is permitted to discredit a GAF score where it is unsupported by objective evidence.  Clark v. Astrue, 2009 WL 542166, at *6 (C.D. Cal. Mar. 4, 2009).  Here, there was substantial other evidence in the record supporting the ALJ's determination that Dr. Kazmi's restrictive opinion conflicted with the findings in his treatment records.  Accordingly, the mere fact that Dr. Kazmi assigned plaintiff a low GAF score does not mean that the ALJ's decision to accord his opinion reduced weight was made in error.

Because there was substantial support in the record for the ALJ's determination that the findings Dr. Kazmi's treating notes conflicted with the extreme limitations he opined, the ALJ did not err in determining that Dr. Kazmi's opinion was entitled to "minimal weight."

/////

---

[3] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Plaintiff also appears to assert that the ALJ improperly considered the opinions of Dr. Torrez and Dr. Weiss, two examining psychologists. With regard to Dr. Torrez's opinion, plaintiff asserts that the ALJ failed to take into account Dr. Torrez's determination that plaintiff would have a "fair to high likelihood of emotionally deteriorating in a work environment," despite finding that her opinion was "fully consistent" with the evidence in the record. The Ninth Circuit Court of Appeals has noted that an ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also 20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations"). Contrary to plaintiff's assertion, the ALJ did take into account Dr. Torrez's opinion regarding plaintiff's likelihood to emotionally deteriorate in the workplace by determining that plaintiff was limited to performing low stress work involving only occasional decision making, changes in the work setting, and interaction with coworkers, and no interaction with the public. AT 15. Furthermore, the ALJ expressly noted that Dr. Torrez's opined limitations, including those stemming from plaintiff's anxiety and emotional abnormalities, were consistent with the record and with the limitations provided in the ALJ's RFC determination. AT 19.

With regard to Dr. Weiss' opinion, plaintiff asserts that the ALJ's reasoning for assigning that opinion reduced weight—that it was inconsistent with the treatment record—was not supported by substantial evidence. However, the ALJ specifically determined that Dr. Weiss's finding that plaintiff's symptoms became worse even when using psychotropic medication was at odds with plaintiff's treatment records, which was supported by substantial evidence. Indeed, plaintiff's mental health treatment records demonstrate that plaintiff reported that her symptoms were generally stable and actually improved each time she was prescribed an increased dosage of her medications. E.g., AT 272-76, 347-49. Plaintiff asserts that Dr. Kazmi's assignment of a decreasing GAF score to plaintiff over the course of plaintiff's treatment bolsters Dr. Weiss' opinion, therefore undermining the ALJ's reasoning for assigning that opinion reduced weight. However, as discussed above with regard to the ALJ's consideration of Dr. Kazmi's opinion, a low GAF score, standing alone, does not preclude an ALJ from relying on other, contrary

1    evidence in the record to support her conclusion.  See Trinchere, 2008 WL 4395283, at *6; Clark,
2    2009 WL 542166, at *6.  Here, there existed other substantial evidence in the record on which the
3    ALJ could properly conclude that certain aspects of Dr. Weiss' opinion were not supported.
4    Accordingly, plaintiff's argument that the ALJ erred in considering Dr. Weiss' opinion is without
5    merit.

6         Finally, it also appears that plaintiff contests the ALJ's decision to assign greater weight to
7    the opinions of Dr. Torrez, an examining psychiatrist, and Dr. Annis, a non-examining physician
8    who reviewed plaintiff's records.  Plaintiff contends that Dr. Torrez only examined plaintiff on
9    one occasion, that Dr. Annis never treated plaintiff, and that neither physician based their
10   respective opinions on findings independent from those made by Dr. Kazmi.  These arguments
11   are without merit.  First, while the extent of the treatment relationship is one factor for the ALJ to
12   consider, it is not controlling, because in virtually every case the treating physician would have a
13   more extensive relationship with the claimant than a consultative specialist.  Here, the ALJ took
14   into account the relationship between plaintiff and each of the opining physicians as part of her
15   larger determination regarding the weight to be assigned to each physician relative to one another.
16   AT 15-22.  Furthermore, plaintiff's argument that neither physicians' opinion was based on
17   independent findings is without merit because Dr. Torrez conducted an independent mental
18   examination of plaintiff and based her opinion, in part, on her findings from that examination, and
19   the ALJ was permitted to assign greater weight to Dr. Annis' opinion despite his role as a non-
20   examining physician because it was supported by other substantial evidence in the record.  See
21   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining
22   physician's "opinion alone constitutes substantial evidence, because it rests on [the examining
23   physician's] own independent examination of [the claimant]"); Magallanes, 881 F.2d at 752
24   (holding that a non-examining physician's opinion may constitute substantial evidence when it is
25   consistent with other independent evidence in the record).  Indeed, as the ALJ noted in her
26   decision, Dr. Torrez's and Dr. Annis' opinions were generally consistent with one another and
27   with the objective medical evidence found in plaintiff's treatment records.  AT 21.  Therefore, the
28   ALJ did not err by assigning greater weight to the opinions of these two physicians.

In sum, the ALJ properly considered and weighed the medical opinion evidence in the record in determining plaintiff's RFC. Therefore, plaintiff's argument that she erred in determining plaintiff's RFC is without merit.

B. *The ALJ did not err in Discounting the Third Party Statement of Plaintiff's Son*

Plaintiff also argues that the ALJ erred in discounting the third party report of plaintiff's son that supported plaintiff's allegations that her impairments rendered her disabled.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. Nevertheless, the ALJ is not required "to discuss every witness's testimony on a individualized, witness-by-witness basis." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Indeed, while the applicable regulations require "the ALJ to consider testimony from family and friends submitted on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 at 1114.

When the ALJ provides clear and convincing reasons for discounting a claimant's testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for rejecting the third-party lay witness's testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114. Furthermore, even when the ALJ errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is harmless if that layperson's testimony largely reflects the limitations described by the claimant

12

and the ALJ provides clear and convincing reasons for discounting the claimant's testimony, because the layperson's testimony in such a circumstance is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (quotation marks omitted).

Here, the ALJ assigned "minimal weight" to plaintiff's son's third party statement because it was "nearly identical" to plaintiff's own function report and because it was "not well supported by the very minimal treatment and minimal mental status findings." AT 22. Plaintiff contends that these were not germane reasons for discounting the third party report because plaintiff's son's statements reflected his own independent observations regarding plaintiff's impairments and functional limitations despite their similarities to plaintiff's report. Plaintiff argues further that the record actually shows that plaintiff's son's opinion was consistent with the limitations assessed by plaintiff's treating, examining, and non-examining physicians. Plaintiff's arguments are not well taken.

First, as the ALJ determined, plaintiff's son's statements regarding the extent and impact of plaintiff's impairments and functional limitations in his report essentially echoed plaintiff's own testimony. Compare AT 205-12 (plaintiff's function report) with AT 213-20 (plaintiff's son's function report). The ALJ discounted plaintiff's testimony and provided multiple reasons in support of doing so. AT 16-18. Plaintiff does not dispute the ALJ's reasons for discounting plaintiff's testimony and a review of those reasons demonstrates that they are clear and convincing reasons supported by substantial evidence from the record. Given the clear similarities between plaintiff's own statements and those in her son's report, the ALJ's reasons for discounting plaintiff's testimony were equally germane to plaintiff's son's third party testimony. Valentine, 574 F.3d at 694. Therefore, the ALJ did not err by finding that the similarities between these two sets of testimony undermined the credibility of plaintiff's son's report. Moreover, even had the ALJ failed to provide any reasons for her decision to discount plaintiff's son's report, it would not have constituted prejudicial error warranting remand. See Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that

the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"). Accordingly, the ALJ's first reason in support of her decision to discount plaintiff's son's statement was, by itself, a germane reason.

Furthermore, there exists substantial support in the medical record for the ALJ's determination that plaintiff's son's report conflicted with the medical findings of plaintiff's physicians, another germane reason for discounting lay witness testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)) (finding that "[i]nconsistency with medical evidence" is a germane reason for discrediting lay witness testimony). For instance, Dr. Torrez determined that plaintiff had only mild-to-moderate limitations with regard to memory- and concentration-related activities, while plaintiff's son claimed that plaintiff exhibited severe impairments in those areas while carrying out her daily activities. AT 214-15, 342. Similarly, plaintiff's treating and examining records show that her physicians commonly described her as alert and having intact cognition with some difficulties in concentration. E.g., AT 264, 266, 285, 296, 312, 375. In addition, while plaintiff's son reported that plaintiff's sleep was impaired to the extent that she experienced sleep issues on a nightly basis, plaintiff's treatment notes show that she reported more often than not that her sleep was "okay" or "good" and that it improved when she received increased dosages of her prescribed medications. AT 214, 272-76, 313, 374, 350, 353. Accordingly, the ALJ's focus on the conflict between plaintiff's son's report and the medical evidence in the record was not in error and constituted yet another germane reason for finding the statements in that report regarding the impact of plaintiff's mental impairments less than fully credible.

V.    CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;

/////

/////

/////

/////

2. The Commissioner's cross-motion for summary judgment (ECF No. 26) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  June 2, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 vongdeng1071.ss